UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TIFFANY HSUEH,

Plaintiff,

-against-

THE NEW YORK STATE DEPARTMENT OF
FINANCIAL SERVICES a/k/a THE DEPARTMENT
OF FINANCIAL SERVICES and ABRAHAM
GUEVARA, *Individually*,

Defendants.

No. 15-cv-03401 (PAC)

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT DFS'S MOTION FOR SPOLIATION SANCTIONS AGAINST PLAINTIFF

ERIC T. SCHNEIDERMAN
Attorney General of the State of New York
<u>Attorney for defendant DFS</u>
120 Broadway, 24th Floor
New York, New York 10271
(212) 416-6211
Eva.Dietz@ag.ny.gov

EVA L. DIETZ
Assistant Attorney General
    <u>of</u> <u>Counsel</u>

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................................ ii

PRELIMINARY STATEMENT ....................................................................................................1

STATEMENT OF THE CASE ......................................................................................................1

    A. Factual Background ........................................................................................................1

    B. Procedural History ..........................................................................................................2

    C. Plaintiff's Destruction of Key Evidence ........................................................................4

ARGUMENT .................................................................................................................................4

    A. Plaintiff Had An Obligation To Preserve The Recording ...............................................6

    B. Plaintiff Deleted The Recording Intentionally ...............................................................7

    C. The Recording Was Highly Relevant To DFS's Defense ..............................................10

CONCLUSION ............................................................................................................................12

## TABLE OF AUTHORITIES

**Cases**                                                                                           **Page(s)**

Best Payphones v. City of New York,
    No. 1-CV-3934 (JG), 2016 U.S. Dist. LEXIS 25655 (E.D.N.Y. Feb. 26, 2016) ......................7

Byrnie v. Town of Cromwell Bd. of Educ.,
    243 F.3d 93 (2d Cir. 2001) ................................................................................................4, 8

Cat3, LLC v. Black Lineage, Inc.,
    14 Civ. 5511 (AT), 2016 U.S. Dist. LEXIS 3618 (S.D.N.Y. Jan. 12, 2016) ............................8

Ciacciarella v. Bronko,
    No. 3:07-cv-1241 (MRK), 2009 U.S. Dist. LEXIS 116257 (D. Conn. Dec. 11, 2009) ............6

Coale v. Metro-North R.R. Co.,
    No. 3:08-cv-01307 (CSH), 2016 U.S. Dist. LEXIS 48538 (D. Conn. Apr. 11, 2016)..............8

Deanda v. Hicks,
    137 F. Supp. 3d 543 (S.D.N.Y. 2015) ......................................................................................9

Feingold v. New York,
    366 F.3d 138 (2d Cir. 2004) ......................................................................................................3

Fleck v. Gen. Motors,
    No. 14-MD-2543 (JMF), 2015 U.S. Dist. LEXIS 172723 (S.D.N.Y. Dec. 29, 2015)....5, 7, 10

Fujitsu Ltd. v. Fed. Express Corp.,
    247 F.3d 423 (2d Cir. 2001) ......................................................................................................6

Hawley v. Mphasis Corp.,
    302 F.R.D. 37 (S.D.N.Y. 2014)................................................................................................8

IBM v. BGC Partners, Inc.,
    No. 10 Civ. 128 (PAC), 2013 U.S. Dist. LEXIS 59775 (S.D.N.Y. Apr. 25, 2013) ..............4, 6

In re Bridge Constr. Servs. of Fla.,
    12-cv-3536 (JGK), 2016 U.S. Dist. LEXIS 63411 (S.D.N.Y. May 13, 2016)..........................8

Kosher Sports, Inc. v. Queens Ballpark Co.,
    No. 10-CV-2618 (JBW), 2011 U.S. Dist. LEXIS 86651 (E.D.N.Y. Aug. 5, 2011)......9, 10, 12

MasterCard Int'l, Inc. v. Moulton,
    No. 03 Civ. 3613 (VM), 2004 U.S. Dist. LEXIS 11376 (S.D.N.Y. June 22, 2004) ...............11

McIntosh v. United States,
    No. 14-CV-7889 (KMK), 2016 U.S. Dist. LEXIS 44290 (S.D.N.Y. Mar. 31, 2016)...............8

Metro Found. Contractors, Inc. v. Arch Ins. Co.,
    551 Fed. Appx. 607 (2d Cir. 2014)............................................................................5, 12

Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Secs., LLC,
    685 F. Supp. 2d 456 (S.D.N.Y. 2010) ...........................................................................10

Residential Funding Corp. v. DeGeorge Fin. Corp.,
    306 F.3d 99 (2d Cir. 2002) ........................................................................5, 8, 10, 11

Sekisui Am. Corp. v. Hart,
    945 F. Supp. 2d 494 (S.D.N.Y. 2013) .....................................................................9, 10, 11

West v. Goodyear Tire & Rubber Co.,
    167 F.3d 776 (2d Cir. 1999) .....................................................................................4, 5, 12

**Rules**

Fed. R. Civ. P. 37(e) ........................................................................................................8

Defendant New York State Department of Financial Services ("DFS") respectfully submits

this memorandum of law and the accompanying Declaration of Eva L. Dietz, dated June 13, 2016

("Dietz Decl."), in support of its motion for spoliation sanctions against plaintiff Tiffany Hsueh.

## PRELIMINARY STATEMENT

As demonstrated below, there is no question that plaintiff intentionally destroyed highly

relevant evidence while she had an obligation to preserve it.  Accordingly, the sole issue to be

determined is the nature of the sanction that should be imposed for her egregious act of spoliation.

For the reasons that follow, the only appropriate sanction is the dismissal of plaintiff's claim

against DFS (or, at the very least, an adverse inference).

## STATEMENT OF THE CASE

### A.  Factual Background[1]

Plaintiff is a current DFS employee who alleges that she was sexually harassed by her

now-retired co-worker, defendant Abraham Guevara, over the course of seven to eight months.

See Complaint.  According to plaintiff's own version of events, she and Guevara had a pleasant,

collegial relationship for well over a year until, she alleges, Guevara began to sexually harass her

in January 2014.  Id. ¶¶ 16-17.  However, plaintiff admits that she did not discuss Guevara's

conduct with any of her supervisors until July 2014.  Id. ¶ 27.  She further admits that when she

did finally approach a supervisor, he advised her of her right to file an internal complaint against

Guevara.  Id. ¶ 28.  And finally, plaintiff admits that she declined to file an internal complaint,

instead requesting that Guevara be directed not to contact her.  Id. ¶¶ 27-28.  Guevara was so

directed but, according to plaintiff, he made further attempts to contact her.  Id. ¶¶ 28-29, 32, 34.

---

[1] Plaintiffs' factual allegations, rather than the actual facts uncovered during discovery in this action, are relevant for
purposes of the instant motion.  As a result, and unless otherwise indicated, this "Factual Background" section will
refer to the Complaint.  DFS does not, however, adopt or otherwise concede the veracity of plaintiff's version of
events either in whole or in part.  To the contrary, in the event that plaintiff's claim against DFS survives the instant
motion, DFS will demonstrate at the appropriate time that plaintiff's claim has no basis in law or in fact.

She therefore filed an internal complaint against him in August 2014. Id. ¶ 34. Guevara retired

the very next month, in September 2014. Id. ¶ 35. What plaintiff fails to mention is that DFS

placed Guevara on administrative leave immediately after she filed her internal complaint

(meaning that he was already on leave from DFS when he retired). See Dietz Decl., Ex. A.

### B.  Procedural History

Approximately four months after Guevara's retirement, on February 2, 2015, plaintiff's

attorney in this action, Joshua Frank, Esq., sent a letter to DFS advising that he had been retained

to represent plaintiff "regarding claims of sexual harassment and gender discrimination against"

DFS and Guevara. See Dietz Decl., Ex. B. Mr. Frank also enclosed a draft complaint purporting

to "set[] forth a detailed recitation of the facts alleged." Id. The draft complaint is nearly

identical to the pleading that initiated the instant lawsuit. See Complaint. Finally, Mr. Frank

stated that the "letter is being sent preliminarily to a lawsuit in a good faith attempt to resolve

this matter." See Dietz Decl., Ex. B. To that end, he asked that a representative from DFS

contact him "by 12:00 p.m. on February 17, 2015 to discuss this matter. If I do not hear from

you...we shall immediately thereafter commence the litigation process by filing a Charge of

Discrimination with the EEOC." Id. Significantly, Mr. Frank "advised that it is extremely

important that all documents and surveillance footage maintained by [DFS] relating to this

matter be immediately protected from destruction and preserved" and that "[t]he obligation to

preserve documents and surveillance footage extends...to all documents and video footage

relating to this matter, regardless of their form or format." Id. There is no evidence that Mr.

Frank sent a similar letter and/or a draft complaint (or any other communication) to Guevara.

Plaintiff subsequently "filed charges of discrimination" against DFS with the Equal

Opportunity Employment Commission ("EEOC"). See Complaint ¶ 5. The EEOC issued a

2

Notice of Right to Sue on April 7, 2015, id. ¶ 6, and plaintiff initiated this lawsuit on May 1, 2015. See Docket No. 1. The Complaint named both DFS and Guevara as defendants. See Complaint. Plaintiff's allegations against DFS focus on the investigation of her internal complaint against Guevara, which she contends was mishandled. Id. ¶¶ 34-39. More specifically, she alleges that "Allison Clavery of Human Resources," the DFS employee who investigated her complaint, "would simply tell her to 'stay quiet,' failing to take her allegations seriously. In fact, Ms. Clavery admonished Plaintiff to 'stay quiet' approximately a dozen times. Ms. Clavery appeared unconcerned regarding the actual substance of the 'investigation.'" Id. ¶ 36. Plaintiff further alleges that she "was completely excluded from Defendant DFS's 'investigation.' Furthermore, the purported investigation has dragged on for months while DFS has allowed Defendant Guevara to 'retire' in September 2014 rather than face the consequences of his persistent and blatant sexual harassment." Id. ¶ 35. Finally, she alleges that "[t]o date, DFS has not informed Plaintiff about anything regarding its investigation despite her requests to be apprised of the findings." Id. ¶ 37. In addition to these allegations about the investigation, plaintiff complains that Guevara "was in the subject office building three times since his retirement" and that "a monetary collection for his 'retirement'" was organized. Id. ¶¶ 38-39.

On the basis of these allegations, plaintiff sought to assert four claims against DFS, one under Title VII of the federal Civil Rights Act ("Title VII") and three under the New York City Human Rights Law ("NYCHRL"). See Complaint ¶¶ 48-59. However, her attorney has since conceded that the NYCHRL claims against DFS cannot stand because state agencies like DFS have Eleventh Amendment immunity against such claims. Feingold v. New York, 366 F.3d 138, 149 (2d Cir. 2004) ("[W]e find that the claim against the DMV brought pursuant to the NYCHRL is also barred by state sovereign immunity. The City of New York does not have the

power to abrogate the immunity of the State, and we have found no evidence that the State has consented to suit in federal court under the NYCHRL."). Thus, a single Title VII claim remains against DFS.

### C. Plaintiff's Destruction of Key Evidence

During her deposition, plaintiff was asked if she had recorded any of her conversations with Allison Clavery. See Dietz Decl., Ex. C at 205:11-12. Although she initially denied having made any such recordings, plaintiff was eventually forced to admit that she did in fact secretly record at least one of her meetings with Ms. Clavery. Id. at 205:11 – 208:25, 210:22-24. She said she did so "[b]ecause it would show what exactly she was saying her actions and – but everything she was telling me. Like telling me again to stay silent and be quiet." Id. at 206:17-20. Plaintiff further admitted that she subsequently listened to the recording of her meeting with Ms. Clavery. Id. at 211:4-5. And finally, plaintiff admitted that she deleted the recording. Id. at 206:4-8. She said she did so because "the voice recording itself [was] not very clear, so I did not feel it was worth keeping." Id. at 207:17-19, 210:22 – 211:3.

### ARGUMENT

Spoliation is defined as "'the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.'" Byrnie v. Town of Cromwell Bd. of Educ., 243 F.3d 93, 107 (2d Cir. 2001) (quoting West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999)); see also IBM v. BGC Partners, Inc., No. 10 Civ. 128 (PAC), 2013 U.S. Dist. LEXIS 59775, at *3 (S.D.N.Y. Apr. 25, 2013) (Crotty, J.) (same). Because plaintiff's deletion of the recording (or recordings) at issue clearly constitutes spoliation, sanctions are appropriate. IBM, 2013 U.S. Dist. LEXIS 59775, at *3-4 ("District courts 'may impose sanctions for spoliation' pursuant to their 'inherent power to

control litigation.'") (quoting West, 176 F.3d at 779).  Indeed, "[i]t has long been the rule that spoliators should not benefit from their wrongdoing, as illustrated by that favourite maxim of the law, *omnia presumuntur contra spoliatorem*." West, 167 F.3d at 779 (citation omitted).

"'[T]he applicable sanction should be molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine.'" Metro Found. Contractors, Inc. v. Arch Ins. Co., 551 Fed. Appx. 607, 609 (2d Cir. 2014) (summary order) (quoting West, 176 F.3d at 779).  "In particular…a sanction should '(1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party.'" Id. at *609-10 (quoting West, 176 F.3d at 779).  In light of the significance of the evidence at issue, and the willfulness of its destruction, the only sanction that would satisfy these requirements is the dismissal of plaintiff's claim against DFS (or, at the very least, an adverse inference). Id. at 610 ("'Dismissal is appropriate if there is a showing of willfulness, bad faith, or fault on the part of the sanctioned party.'") (quoting West, 176 F.3d at 779).

"Where, as here, a party seeks 'severe' sanctions for the alleged spoliation of evidence – such as the preclusion of critical evidence, an adverse inference instruction, or dismissal of the case – it must establish that (1) the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the evidence was destroyed with a 'culpable state of mind;' and (3) the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could infer that it would support that claim or defense." Fleck v. Gen. Motors, No. 14-MD-2543 (JMF), 2015 U.S. Dist. LEXIS 172723, at *118-19 (S.D.N.Y. Dec. 29, 2015) (citing Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 107 (2d Cir. 2002)

(superseded on other grounds)); see also IBM, 2013 U.S. Dist. LEXIS 59775, at *4 (same). As demonstrated below, all three factors are present in this case.

### A. Plaintiff Had An Obligation To Preserve The Recording

"The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." Fujitsu Ltd. v. Fed. Express Corp., 247 F.3d 423, 436 (2d Cir. 2001). Plaintiff here testified at her deposition that she recorded her meeting (or meetings) with Ms. Clavery "[b]ecause it would show what exactly she was saying her actions and – but everything she was telling me." See Dietz Decl., Ex. C at 206:17-19. Given that plaintiff's allegations against DFS focus in large part on what Ms. Clavery said and did (or did not do) while investigating her internal complaint, see Complaint ¶¶ 34-37, plaintiff was or should have been aware at all times that a recording of her meeting (or meetings) with Ms. Clavery would be highly relevant to this action. Indeed, "[i]t is difficult to conceive of any reason why [plaintiff] would have secretly recorded her conversation with [Ms. Clavery] *other* than to use the recording in litigation if it proved favorable to her. [Plaintiff] may not have been planning to initiate litigation at the time of the conversation, but she must have at least contemplated the possibility and realized that the recording could be valuable evidence." Ciacciarella v. Bronko, No. 3:07-cv-1241 (MRK), 2009 U.S. Dist. LEXIS 116257, at *5 (D. Conn. Dec. 11, 2009) (emphasis in original). Plaintiff therefore "had a duty to preserve the recording from the moment it was made." Id.

Moreover, there is ample evidence to demonstrate that plaintiff deleted the recording at issue at a time when she was or should have been aware of the instant lawsuit. Specifically, she testified during her deposition that she deleted the recording during "the course of 2016 or 2015." See Dietz Decl., Ex. C at 206:6-8. The complaint in this action is dated April 28, 2015

and was filed on May 1, 2015. See Complaint. The EEOC Right to Sue letter attached thereto is

dated April 7, 2015, meaning that plaintiff's EEOC complaint was filed well before then. Id. ¶ 6.

Plaintiff's own testimony thus raises the very real possibility that she deleted the recording after

initiating legal process against DFS. Even if she did not, there is no question that litigation was

reasonably foreseeable well before legal proceedings were formally initiated because on

February 2, 2015, plaintiff's attorney, Joshua Frank, Esq., sent a letter to DFS announcing his

retention by plaintiff and attaching a draft complaint that contained "a detailed recitation of the

facts alleged." See Dietz Decl., Ex. B. Plaintiff had thus retained her attorney in this action by

February 2, 2015 at the absolute latest. And given the fact that Mr. Frank was able to put

together a "detailed" complaint by that date, it stands to reason that plaintiff must have met with

him at some prior time. Indeed, plaintiff testified at her deposition that she retained her attorney

in "December 2014 or January 2015." See Dietz Decl., Ex. D at 268:10-12. It is therefore

evident that plaintiff was well aware of at least the possibility of litigation when she deleted the

recording at issue. Fleck, 2015 U.S. Dist. LEXIS 172723, at *120 ("Plaintiff indisputably knew

or should have known that his car was 'relevant to future litigation' by June 16, 2014, when he

retained counsel."). Moreover, Mr. Frank's letter of February 2, 2015 explicitly invoked "[t]he

obligation to preserve documents…regardless of their format" in connection with the instant

action. See Dietz Decl., Ex. B. It is therefore safe to assume that plaintiff was aware not only of

this lawsuit, but of her preservation obligations, at the time she deleted the recording.

**B. Plaintiff Deleted The Recording Intentionally**

"As to tangible evidence, in the Second Circuit, 'the culpable state of mind factor is

satisfied by a showing that the evidence was destroyed knowingly or grossly negligently, even if

without intent to breach a duty to preserve it, or negligently.'" Best Payphones v. City of New

York, No. 1-CV-3934 (JG), 2016 U.S. Dist. LEXIS 25655, at *17 (E.D.N.Y. Feb. 26, 2016)

(quoting Residential Funding, 306 F.3d at 108, 110 (superseded on other grounds)).[2]  Plaintiff

here has admitted that she intentionally destroyed the recording at issue.  Specifically, she

testified at her deposition that she deleted the recording because "the voice recording itself [was]

not very clear, so I did not feel it was worth keeping." See Dietz Decl., Ex. C at 207:17-19,

210:22 – 211:3.

Such "intentional destruction of documents in the face of a duty to retain those

documents" satisfies the "culpable state of mind" requirement.  Byrnie v. Town of Cromwell Bd.

of Educ., 243 F.3d 93, 109 (2d Cir. 2001) ("At no point has Cromwell asserted that their

destruction was merely accidental.  This is evidence of intentional destruction sufficient to show

a culpable state of mind on Cromwell's part."); Hawley v. Mphasis Corp., 302 F.R.D. 37, 47

(S.D.N.Y. 2014) ("Where a party seeks to demonstrate intent, that intent need not be directed at

spoliation of evidence to the other party's detriment.  Rather, any intentional destruction

suffices."); Sekisui Am. Corp. v. Hart, 945 F. Supp. 2d 494, 506 (S.D.N.Y. 2013) ("The law does

not require a showing of malice to establish intentionality with respect to the spoliation of

---

[2] With respect to "electronically stored information," on the other hand, the recent amendment to Rule 37(e) provides that if such information "is lost because a party failed to take reasonable steps to preserve it," a court can dismiss the case or make an adverse inference "only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e). "The Advisory Committee Notes make it clear that this new provision rejects cases such as Residential Funding…that authorize the giving of adverse-inference instructions on a finding of negligence or gross negligence." Coale v. Metro-North R.R. Co., No. 3:08-cv-01307 (CSH), 2016 U.S. Dist. LEXIS 48538, at *15 n.7 (D. Conn. Apr. 11, 2016). The applicability of this new rule to the instant motion is unclear.  First, "the change in Rule 37(e) applies only to ESI," In re Bridge Constr. Servs. of Fla., 12-cv-3536 (JGK), 2016 U.S. Dist. LEXIS 63411, at *33 (S.D.N.Y. May 13, 2016), and the recording at issue may not qualify.  McIntosh v. United States, No. 14-CV-7889 (KMK), 2016 U.S. Dist. LEXIS 44290, at *107-08 n.34 (S.D.N.Y. Mar. 31, 2016) ("Of course, if the videotape that Plaintiff requests does not constitute 'electronically stored information' within the meaning of Rule 37(e), then the Rule 37(e)'s change is beside the point."). Second, the recording was not lost because plaintiff "failed to take reasonable steps to preserve it," but rather because she intentionally deleted it. See Dietz Decl., Ex. C at 207:17-19, 210:22 – 211:3. And third, the change to Rule 37(e) "was adopted to address concerns that parties were incurring burden and expense as a result of overpreserving data," Cat3, LLC v. Black Lineage, Inc., 14 Civ. 5511 (AT), 2016 U.S. Dist. LEXIS 3618, at *14 (S.D.N.Y. Jan. 12, 2016), which were obviously not factors here.  In any event, as demonstrated herein, plaintiff's destruction of the recording was intentional and therefore satisfies the state of mind requirement set forth in the amended Rule 37(e).

evidence.  In the context of an adverse inference analysis, there is no analytical distinction between destroying evidence in bad faith, *i.e.*, with a malevolent purpose, and destroying it willfully."); cf. Deanda v. Hicks, 137 F. Supp. 3d 543 (S.D.N.Y. 2015) ("Plaintiff points to nothing in the record to show that Hicks intended to destroy the video/audio recording, and, therefore, a finding of bad faith is not warranted.").

Plaintiff's entirely self-serving assertion that she deleted the recording because it was unclear does not withstand scrutiny.  Kosher Sports, Inc. v. Queens Ballpark Co., No. 10-CV-2618 (JBW), 2011 U.S. Dist. LEXIS 86651, at *48-53 (E.D.N.Y. Aug. 5, 2011) (rejecting as "not convincing" spoliator's explanations for secretly recording meetings and then deleting the recordings).  Based on her own document production in this action, it is far more likely that she deleted the recording in order to prevent DFS from using it against her.  Specifically, plaintiff testified at her deposition that the recorded meeting with Ms. Clavery took place in 2015 or 2016.  See Dietz Decl., Ex. C at 208:21 – 209:22.  Yet she preserved and produced a recorded voicemail message from defendant Guevara made, at the very least, several months earlier in July 2014.  See Dietz Decl., Ex. D at 283:23 – 285:2.  She also preserved and produced: (i) a log of telephone calls from Guevara made between May 2014 and July 2014; (ii) photographs she took in July 2014 of gifts Guevara gave her during the course of the previous two years (which she had kept); (iii) a spreadsheet of her interactions with Guevara that she prepared between July 2014 and December 2014 or January 2015; and (iv) screenshots of chain emails from Guevara going back to 2013.  Id. at 126:20 – 129:22; 144:9 – 145:19; 153:3 – 155:16; 238:15 – 239:5; 324:4 – 326:11.  It is therefore evident that plaintiff is capable of preserving evidence, including a recording, if and when she believes it will be helpful to her position in this action.  Indeed, she testified at her deposition that she kept these materials because they were proof of her

9

allegations. Id. at 131:14-22; 148:10-21; 329:8-22.  It therefore stands to reason that she

destroyed the recording at issue because it contained information contrary to her litigation

position, and she did not want DFS to be able to use that information to defend against her

allegations. Kosher Sports, 2011 U.S. Dist. LEXIS 86651, at *53 (reasonable fact finder could

conclude that spoliator secretly "recorded the meetings in question to obtain statements valuable

to plaintiff in its developing dispute with QBC, and that he deliberately destroyed the recordings

because, as it turned out, they were not helpful to plaintiff" because, for example, they contained

statements that were "contrary to plaintiff's litigation position").

### C.  The Recording Was Highly Relevant To DFS's Defense

"Where the destruction of evidence is found to be willful, courts presume the relevance

of the destroyed evidence." Fleck, 2015 U.S. Dist. LEXIS 172723, at *123-24.  In turn, "'[t]he

intentional destruction of relevant records, either paper or electronic, after the duty to preserve

has attached, is willful.'" Sekisui Am. Corp., 945 F. Supp. 2d at 504 (quoting Pension Comm. of

Univ. of Montreal Pension Plan v. Banc of Am. Secs., LLC, 685 F. Supp. 2d 456, 465 (S.D.N.Y.

2010)).  As demonstrated in Point B above, plaintiff deleted the recording at issue intentionally.

Thus, its relevance should be presumed.

In any event, there is ample reason to conclude that the recording would have been

favorable to DFS's defense in this case.  Where relevance is not presumed, "to establish

relevance, the party seeking sanctions 'must adduce sufficient evidence from which a reasonable

trier of fact could infer that the destroyed evidence would have been' favorable to its case."

Fleck, 2015 U.S. Dist. LEXIS 172723, at *123 (quoting Residential Funding, 306 F.3d at 109

(superseded on other grounds)).  This can be accomplished "by showing that the evidence in the

case as a whole suggests that the lost items would have helped to support that party's claims."

10

MasterCard Int'l, Inc. v. Moulton, No. 03 Civ. 3613 (VM), 2004 U.S. Dist. LEXIS 11376, at *12 (S.D.N.Y. June 22, 2004).[3]  Here, as described previously, the gist of plaintiff's claim against DFS is that the agency and, in particular, Allison Clavery, mishandled her internal complaint against Guevara.  See Complaint ¶¶ 33-37.  Plaintiff specifically accuses Ms. Clavery of "tell[ing] her to stay quiet, failing to take her allegations seriously.  In fact, Ms. Clavery admonished Plaintiff to 'stay quiet' approximately a dozen times.  Ms. Clavery appeared unconcerned regarding the actual substance of the 'investigation.'"  Id. ¶ 36.  Plaintiff repeated these accusations numerous times during her deposition, often in response to entirely unrelated questions.  See Dietz Decl., Ex. D at 123:21 – 125:9; 162:13 – 164:9; 172:14-22; 188:17 – 189:11; 198:16 – 202:8; 226:4-25.  There can be no doubt that a recording of what Ms. Clavery actually said to plaintiff would be extremely relevant to – and most likely determinative of – these allegations.

Indeed, plaintiff testified at her deposition that she recorded her meeting (or meetings) with Ms. Clavery specifically "[b]ecause it would show what exactly she was saying her actions and – but everything she was telling me.  Like telling me again to stay silent and be quiet."  See Dietz Decl., Ex. C at 206:17-20.  In other words, she made the recording in order to collect proof that supported her allegations in this action.  Given that she then intentionally deleted the recording, a reasonable fact finder could conclude that she secretly "recorded the meetings in question to obtain statements valuable to plaintiff in [her] developing dispute with [DFS], and that [she] deliberately destroyed the recordings because, as it turned out, they were not helpful to plaintiff."  Kosher Sports, 2011 U.S. Dist. LEXIS 86651, at *53.  Plaintiff's entirely self-serving

---

[3] Significantly, "'courts must take care not to hold the prejudiced party to too strict a standard of proof regarding the likely contents of the destroyed or unavailable evidence, because doing so would subvert the purposes of the adverse inference, and would allow parties who have destroyed evidence to profit from that destruction.'"  Sekisui Am. Corp. v. Hart, 945 F. Supp. 2d 494, 504 (S.D.N.Y. 2013) (quoting Residential Funding, 306 F.3d at 109 (superseded on other grounds)).

assertion that the recording of her meeting with Ms. Clavery "was not very clear" and "not able

to catch most of [Ms. Clavery's] responses," see Dietz Decl., Ex. C at 211:2-11, should not be

countenanced by this Court. Kosher Sports, 2011 U.S. Dist. LEXIS 86651, at *48-53 (rejecting

as "not convincing" spoliator's explanations for secretly recording meetings and then deleting

the recordings).[4] To the contrary, it is much more reasonable to infer that the recording

contained statements by Ms. Clavery that are "contrary to plaintiff's litigation position" – such as

statements demonstrating that she took plaintiff's allegations seriously, investigated them

properly, and did not repeatedly tell her to stay quiet – and which accordingly would have helped

DFS to combat plaintiff's allegations. Id. at *53 ("[F]or example, one possible and reasonable

inference is that the recordings contained statements by Aramark representatives that Aramark

independently objected to plaintiff's aim to operate on Fridays and Saturdays, contrary to

plaintiff's litigation position.").

## CONCLUSION

For the foregoing reasons, DFS respectfully requests that the Court sanction plaintiff's

spoliation by dismissing her claim against DFS (or, at the very least, by imposing an adverse

inference). In the event that the Court declines to take either of these steps, DFS requests, in the

alternative, that the Court use its "'broad discretion in crafting a proper sanction for spoliation'"

to order a sanction against plaintiff that "'serve[s] the prophylactic, punitive, and remedial

rationales underlying the spoliation doctrine.'" Metro Found., 551 Fed. Appx. at 609 (quoting

West, 176 F.3d at 779). DFS also requests that it be awarded the costs, including attorney's fees,

incurred in making the instant motion.

---

[4] Even if the Court accepts plaintiff's assertion that "most of" Ms. Clavery's responses were not captured, a recording of plaintiff's own statements to Ms. Clavery during the meeting at issue would itself be highly relevant to plaintiff's claim against DFS. Moreover, plaintiff's deletion of the recording deprived DFS of the opportunity to attempt to enhance the recording and discern Ms. Clavery's responses for itself.

Dated: New York, New York
      June 13, 2016

                                    Respectfully submitted,

                                    ERIC T. SCHNEIDERMAN
                                    Attorney General of the State of New York
                                    Attorney for defendant DFS
                                    By:

                                    Eva L. Dietz
                                    Assistant Attorney General
                                    120 Broadway, 24th Floor
                                    New York, New York 10271
                                    (212) 416-6211