USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: March 31, 2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
:
TIFFANY HSUEH, :
:
        *Plaintiff*, :
:    15 Civ. 3401 (PAC)
   -*against*- :
:    **OPINION & ORDER**
THE NEW YORK STATE DEPARTMENT :
OF FINANCIAL SERVICES a/k/a THE :
DEPARTMENT OF FINANCIAL SERVICES :
and ABRAHAM GUEVARA, :
:
        *Defendants*. :
:
------------------------------------------------------------X

HONORABLE PAUL A. CROTTY, United States District Judge:

    Plaintiff Tiffany Hsueh brings this action pursuant to Title VII of the Civil Rights Act of 1964 and the New York City Human Rights Law against the New York State Department of Financial Services (the "DFS") and Abraham Guevara (together, "Defendants"), in connection with Guevara's alleged sexual harassment of Hsueh. Hsueh admitted at her deposition that she had recorded a relevant conversation, but had since deleted it. The DFS thereafter filed a motion for spoliation sanctions, requesting dismissal of Hsueh's claim or an adverse inference. For the reasons stated below, the Court grants the DFS's motion for spoliation sanctions and determines that an adverse inference is the appropriate remedy.

## BACKGROUND

    Hsueh alleges that Guevara, her former co-worker at the DFS, began to sexually harass her in January 2014. *See* Am. Compl. ¶ 17. She contends that she raised Guevara's conduct with supervisors and others at the DFS starting in July 2014, but that even though Guevara was

1

warned to stay away from her, he continued to approach and contact her. *See id.* ¶¶ 27–34. Around August 8, 2014, Hsueh alleges she filed a formal sexual harassment complaint with Human Resources. *See id.* ¶ 34. She asserts that she was excluded from the subsequent investigation, and that when she tried to follow up, Allison Clavery of Human Resources failed to take Hsueh's allegations seriously. *See id.* ¶ 36. For example, Clavery allegedly told Hsueh to "stay quiet, . . . admonish[ing] [Hsueh] to 'stay quiet' approximately a dozen times." *Id.* She also alleges that at the time of the Complaint "DFS ha[d] not informed Plaintiff about anything regarding its investigation despite her requests to be apprised of the findings." *Id.* ¶ 37. Guevara retired in September 2014. *Id.* ¶ 35.

On February 2, 2015, Hsueh's attorney, Joshua P. Frank, sent the DFS a letter advising that his office "represents Tiffany Hsueh regarding claims of sexual harassment and gender discrimination against" the DFS and Guevara. *See* Declaration of Eva L. Dietz ("Dietz Decl."), Dkt. 45, at 6.[1] Attached to the letter was a draft complaint Frank described as "set[ting] forth a detailed recitation of the facts alleged." *Id.* Frank stated that the "letter is being sent preliminarily to a lawsuit in a good faith attempt to resolve this matter" and also advised the DFS "that it is extremely important that all documents and surveillance footage maintained by the [DFS] relating to this matter be immediately protected from destruction and preserved." *Id.*

Hsueh filed discrimination charges against the DFS with the Equal Employment Opportunity Commission ("EEOC"), and on April 7, 2015, the EEOC sent Hsueh a Notice of Right to Sue. Compl. ¶ 5; *id.* at 12. Hsueh initiated this action against the DFS and Guevara on May 1, 2015. *Id.* She seeks damages for losses resulting from the alleged unlawful employment

---

[1] The exhibits to Dietz's declarations are combined in the same file as the declarations, and are not filed as separate docket entries. The Court therefore refers to the page numbers generated by the Case Management/Electronic Case Filing system in citing to Dietz's declarations.

practices as well as "compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to her reputation." *Id.* at 10.

On December 21, 2015, the DFS sent Hsueh a discovery request for "[a]ll documents concerning Plaintiff's physical and/or emotional condition from January 1, 2005 through the present, including but not limited to documents concerning any physical and/or emotional conditions for which Plaintiff was examined, diagnosed, treated or counseled during that period." *See* Reply Declaration of Eva L. Dietz ("Reply Dietz Decl."), Dkt. 80, at 12. DFS also requested that Hsueh "[i]dentify . . . all physicians, doctors, psychiatrists, psychologists, therapists, counselors, social workers, case workers or other physical or mental health-care practitioners who have examined, diagnosed, treated or counseled Plaintiff for any physical or mental condition from January 1, 2005 through the present," and "all hospitals, clinics or other physical or mental health-care facilities at which Plaintiff has been examined, diagnosed, treated or counseled for any physical or mental condition from January 1, 2005 through the present." *Id.* at 20.

On January 25 and February 2, 2016, Hsueh responded to the DFS's requests. *See id.* at 23, 37. She stated that she "has provided a HIPAA authorization permitting the release of her medical records from July 2012 until the present from Monika Jamrozek-Burra, LMHC- N.Y. Psychiatric Services, the only provider who has examined, diagnosed, treated or counsel Plaintiff for emotional distress." *Id.* at 34. She also stated that she "sought therapy" from Jamrozek-Burra "following Defendant Guevara's sexual harassment." *Id.* at 41.

Prior to Hsueh's April 20, 2016 deposition in this action, the DFS discovered an action Hsueh brought on July 5, 2011 in the Eastern District of New York in connection with an alleged false arrest that she claimed "resulted in extreme emotional distress to [her]" (the "2011

3

Action"). *See id.* at 58. The action was settled on February 28, 2012, with a payment of $40,000 to Hsueh. *See id.* at 63.

At her April 20, 2016 deposition, Hsueh stated that she had not, aside from the current case, had any emotional problems, and that she had not seen any mental health counselors other than Jamrozek-Burra. *Id.* at 69–70. After she was shown her 2011 Action complaint, she stated that she had had emotional distress for at least three years in connection with the arrest, and that she was in fact still distressed about the arrest. *See id.* at 71–74. She also stated that she did not believe she sought help for that emotional distress. *See id.* at 74. The DFS thereafter requested, and Hsueh later provided, documents relating to the 2011 Action. This included a letter written by Hsueh that stated that she "had to struggle with . . . constant terror and continuous nightmares," that she "cried [herself] to sleep every night," and that she "contemplated suicide for months after the assault." *Id.* at 95–96. In her interrogatory responses in the 2011 Action, Hsueh stated that she had "suffered psychological injury, including but not limited to, depression, anxiety and post-traumatic stress as a direct result of [the arrest]," and that she was treated at the "Advanced Center for Psych, 178 10 Wexford Terrace, Jamaica Estates, New York 11375. *Id.* at 91. The DFS then obtained "plaintiff's psychiatric records from the Advanced Center for Psychotherapy in late-June 2016." *Id.* at 2.

Also at her April 20, 2016 deposition, Hsueh initially stated that she did not think she had recorded any conversations with Clavery, but conceded it was possible that she did. Dietz Decl. at 20. She eventually explained that she thought she had recorded one meeting with Clavery in either December of 2015 or January of 2016, and that she deleted the recording in "[e]ither the course of 2016 or 2015" because "the voice recording itself . . . was not very clear, so [she] did not feel it was worth keeping." *Id.* at 20–24.

4

On May 6, 2016, the DFS submitted a letter requesting a conference on a proposed motion for spoliation sanctions in connection with Hsueh's deletion of the recording. Dkt. 37. On May 10, 2016, the Court held a conference. *See* Dkt. 41. The Court set a briefing schedule for the DFS's proposed spoliation sanctions motion: the DFS's motion was due on June 13, 2016; Hsueh's response was due July 11, 2016; and the DFS's reply was due July 25, 2016. *See id.*

On June 13, 2016, the DFS filed its motion for spoliation sanctions against Hsueh. Dkt. 44. Guevara joined in the DFS's motion on July 8, 2016. Dkt. 51. On July 11, 2016—the day Hsueh's opposition to the spoliation sanctions motion was due—Frank submitted a letter to the Court advising that "I received an e-mail from my client at 10:16 p.m. last evening, which contained an audio recording attachment of a meeting between my client and Allison Clavery." Dkt. 53. Frank noted that "the e-mail indicated that the recording had been recovered with the help of Plaintiff's husband." *Id.* Frank stated that he was "awaiting any further instructions with regard to Defendant DFS's motion." *Id.*

The DFS responded to Frank's letter the same day it was filed, and requested that discovery be reopened[2] and that Hsueh and her husband be required to sit for depositions regarding the recording. *See* Dkt. 54. The DFS also argued that Hsueh should have to testify regarding her mental health history as the DFS had only received materials relating to it "over the past few weeks, despite requesting them back in December 2015." *Id.* Finally, the DFS requested costs associated with the depositions and the spoliation sanctions motion. *Id.* Guevara also submitted a letter "respectfully request[ing] that the Court decide the pending motion, permit a continued deposition of the plaintiff concerning the recorded conversation, and impose

---

[2] Fact discovery had closed on April 29, 2016. Dkt. 26.

monetary sanctions upon plaintiff in the costs and attorney's fees of the instant motion." Dkt. 55.

On July 12, 2016, the Court ordered that discovery be reopened for 90 days to allow Defendants to depose Hsueh and her husband regarding the recording, and to depose Hsueh regarding "any other discovery [Hsueh] made, post discovery cutoff (e.g. past mental health history)." Dkt. 56. The Court reserved the right to impose attorney's fees and costs in connection with the reopened discovery and "the right to impose further sanctions should DFS's spoliation motion be granted." *Id.* The Court also ordered that "[t]he spoliation motion may be revised and supplemented after reopened discovery is concluded." *Id.*

Hsueh and her husband, Andrew Joe, were deposed on September 9 and 16, 2016, respectively. *See* Declaration of Joshua P. Frank, Esq. (Dkt. 78) at ¶ 3. Joe explained that he was able to recover the recording from a hard drive he uses to back up his and Hsueh's computers. Supplemental Declaration of Eva L. Dietz ("Supp. Dietz Decl.") (Dkt. 66) at 57.

On November 7, 2016, the DFS submitted a letter and two declarations in support of its spoliation sanctions motion. Dkt. 65–67. On November 14 and 16, 2016, the Court set the deadline for Hsueh's opposition to the DFS's spoliation sanctions motion for December 14, 2016, and Defendants' replies for January 6, 2017. Dkt. 69, 71. On December 13, 2016, Hsueh filed her opposition to the spoliation sanctions motion. Dkt. 76–78. On January 5, 2017, the DFS and Guevara submitted their replies. Dkt. 79–82.

## DISCUSSION

### I. Applicable Legal Standard

Hsueh takes the position that the instant motion is governed by Fed. R. Civ. P. 37(e). The Court may impose spoliation sanctions pursuant to Fed. R. Civ. P. 37(e) "[i]f electronically

6

stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery." Where the party that failed to preserve the electronically stored information ("ESI") "acted with the intent to deprive another party of the information's use in the litigation," the Court may "instruct the jury that it may or must presume the information was unfavorable to the party" or "dismiss the action or enter a default judgment." Fed. R. Civ. P. 37(e)(2).

Defendants contend that it is unclear that Rule 37(e) applies here. First, they argue that the audio recording might not be ESI. *See* DFS Br. (Dkt. 46) at 8 n.2; Guevara Br. (Dkt. 51) at 3 n.3. The Court disagrees. The recording was made using a digital recorder, and was saved in a digital format. Supp. Dietz Decl. at 48. Other district courts have applied Rule 37(e) to audio recordings stored electronically, *see Brackett v. Stellar Recovery, Inc.*, 15 Civ. 24, 2016 WL 1321415, at *1–2 (E.D. Tenn. Feb. 24, 2016); *Savage v. City of Lewisburg, Tenn.*, 10 Civ. 0120, 2014 WL 6827329, at *2 (M.D. Tenn. Dec. 3, 2014); *see also* Committee Notes to the 2006 Amendment to Fed. R. Civ. P. 34 ("The wide variety of computer systems currently in use, and the rapidity of technological change, counsel against a limiting or precise definition of electronically stored information."), and the Court can think of no reason why a digital audio recording would not be ESI.

The DFS also argues that Rule 37(e) applies only to situations where "a party failed to take reasonable steps to preserve" ESI; not to situations where, as here, a party intentionally deleted the recording. *See* DFS Br. at 8 n.2. This makes sense. The Committee Notes to the 2015 Amendment to Rule 37 explain that Rule 37(e) is meant to address "the serious problems resulting from the continued exponential growth in the volume of" ESI as well as "excessive

7

effort and money" that litigants have had to expend to avoid potential sanctions for failure to preserve ESI. *See also Cat3, LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488, 495 (S.D.N.Y. 2016) (Rule 37(e) "was adopted to address concerns that parties were incurring burden and expense as a result of overpreserving data, which they did because they feared severe spoliation sanctions"). These considerations are not applicable here. It was not because Hsueh had improper systems in place to prevent the loss of the recording that the recording no longer existed on her computer; it was because she took specific action to delete it. The Court therefore concludes that Rule 37(e) does not apply.

Because Rule 37(e) does not apply, the Court may rely on its inherent power to control litigation in imposing spoliation sanctions. *See West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999); *Cat3*, 164 F. Supp. 3d at 497. "A party seeking an adverse inference instruction based on the destruction of evidence must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 162 (2d Cir. 2012) (alteration omitted). "If these elements are established, a district court may, at its discretion, grant an adverse inference jury instruction insofar as such a sanction would serve the threefold purpose of (1) deterring parties from destroying evidence; (2) placing the risk of an erroneous evaluation of the content of the destroyed evidence on the party responsible for its destruction; and (3) restoring the party harmed by the loss of evidence helpful to its case to where the party would have been in the absence of spoliation." *Id.* (internal quotation marks and alterations omitted).

## II. Produced Recording

Hsueh does not dispute that she should have preserved the recording (or that she failed to take reasonable steps to preserve it). Instead, she argues that because the recording has been restored or replaced, no sanctions are warranted. She states that "[t]he copy of the recording my husband found is a complete copy of the recording I made." Declaration of Plaintiff Tiffany Hsueh in Opposition to DFS's Motion for Spoliation Sanctions ("Hsueh Decl.") (Dkt. 77) ¶ 5. Hsueh's argument is unpersuasive for several reasons.

First, Hsueh conceded in her first deposition that she "didn't listen to the whole thing. [She] listened to the first few minutes . . . ." Dietz Decl. at 26. Thus, it is not clear how Hsueh can conclude that the copy found by her husband is a complete copy of the original recording.

Second, the recording is only approximately 10 minutes long, yet the meeting appears to have lasted approximately 45 minutes. Declaration of Allison Clavery ("Clavery Decl.") (Dkt. 67) ¶ 3. The recording also appears to cut off mid-sentence. *See* Supp. Dietz Decl. at 29. Hsueh testified in her second deposition that she believed the recording might have cut off where it did because "[t]hat's as far as the space on [her] recorder had." *Id.* at 40. But there is no way to confirm Hsueh's belief. She donated the recording device, *id.* at 48, and she does not know what the recording device's capacity was, *id.* at 49.

Third, Hsueh's husband, "who works in the field of information technology," Hsueh Decl. ¶ 4, conceded that he cannot be sure the recording is the full recording, *see* Supp. Dietz Decl. at 60.

Thus, there is good reason to conclude that the produced recording is incomplete.

## III. Intent/State of Mind

Hsueh asserts that the reason she deleted the recording was because she "could barely

9

hear it, and [she] was also nervous if it was legal to record without permission." Supp. Dietz Decl. at 46. She also asserts that "[a]t her deposition, she admitted to making the recording; she did not deny its existence." Opp'n at 5. She therefore argues that sanctions are inappropriate because when she deleted the recording, she did not act "with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e). The Court does not agree. As an initial matter, Hsueh cites to Rule 37(e), which is inapplicable here. But even if Rule 37(e) applied, the Court would still conclude that Hsueh acted with the intent to deprive the Defendants the use of the recording.

Hsueh's explanation that she "could barely hear" the recording when she deleted it is seriously undermined by the fact that she agreed she could hear the recording when it was played during her second deposition. *See* Supp. Dietz Decl. at 47. And Hsueh only offered her explanation that she deleted the recording because of legal concerns at her second deposition, not at her first. *See* Supp. Dietz Decl. at 6. It therefore appears that she came up with this explanation after the fact.

Hsueh also omits that during her first deposition, she initially did not admit that she recorded any conversation with Clavery:

Q: Did you ever record these conversations with Ms. Clavery?

A: No, I don't believe so.

Q: You don't believe so, or do you know?

A: I don't think so.

Q: Is it possible that you recorded conversations with Ms. Clavery?

A: It is possible.

Q: Were you recording conversations that you had with Ms. Clavery?

10

A: I don't remember. And like I deleted and lost a bunch of stuff in my files. It has been two years. I only found my health insurance records yesterday. Otherwise I would have given them to Josh before, so I might have recorded something.

Dietz. Decl. at 20–21.

The transcript of the produced recording does not show Clavery telling Hsueh to "stay quiet" or clearly failing to take Hsueh's allegations seriously. *See* Supp. Deitz Decl. at 22–30. In light of this and the unconvincing reasons Hsueh has given for deleting the recording, the Court concludes that Hsueh deleted the recording to prevent the DFS from using it during the litigation.[3] Thus, Hsueh acted in bad faith in deleting the recording.

## IV. Relief

Under either Rule 37(e) and the Court's inherent authority, an adverse inference is the appropriate remedy in light of the Court's findings. Hsueh was under an obligation to preserve the recording; the recording was undoubtedly highly relevant to Hsueh's claim against the DFS; and Hsueh acted in bad faith, and with an intent to deprive the DFS of the use of the recording, in deleting it.

---

[3] Although not raised in support of her argument that she did not intend to deprive the DFS of the use of the recording, it bears noting that Hsueh states "I did not make the recording with the intention of bringing a lawsuit against my employer. I made the recording primarily to protect myself from retaliation after hearing rumors that I was at fault for Abraham Guevara's sexual harassment." Hsueh Decl. ¶ 2. Hsueh also stated at her first deposition that she made the recording to protect herself from retaliation from "[Clavery] herself, DFS." Dietz Decl. at 21–22. The Court finds these assertions to be unsupported. Hsueh offers no explanation for how or why Clavery would have retaliated against her. Nor is there any explanation for why Hsueh thought recording a conversation with Clavery would protect her against retaliation. Instead, the facts support the conclusion that Hsueh recorded the conversation for purposes of this litigation. The recording was made on January 15, 2015, *see* Clavery Decl. ¶ 2, at which time Hsueh would have hired, or at least would have contemplated hiring, counsel in order for counsel to have sent a draft of the complaint to the DFS by February 2, 2015, *see also* Dietz Decl. at 57 (Hsueh hired her attorney in "December 2014 or January 2015"). And Hsueh stated at her first deposition that she was recording her conversation with Clavery "[b]ecause . . . I do not feel she was responding appropriately to my harassment complaints" and "[b]ecause it would show what exactly she was saying her actions and -- but everything she was telling me. Like telling me again to stay silent and be quiet." Dietz Decl. at 21.

11

Defendants also seek attorney's fees and costs in connection with bringing the spoliation sanctions motion and conducting reopened discovery. Hsueh disputes the appropriateness of fees and costs for re-opened discovery "as the vast majority of the discovery focused on Plaintiff's past mental health," but does not argue that fees and costs are inappropriate for the spoliation sanctions motion. *See* Opp'n at 6. The Court concludes, however, that Hsueh's failure to disclose information relating to her past mental health was done in bad faith. It does not seem reasonable that Hsueh forgot that she previously experienced emotional distress given that she brought a lawsuit specifically seeking damages for emotional distress, and given that she stated that she "contemplated suicide for months after" the arrest. *See* Reply Dietz Decl. at 96. Nor does Plaintiff attempt to offer any justification for her failure to disclose information relating to her prior mental health. The Court therefore determines that Defendants are entitled to their attorney's fees and costs incurred in bringing the instant motion and in reopening discovery.

## CONCLUSION

The Court grants the DFS's motion for spoliation sanctions. Defendants must submit documentation detailing their costs and attorney's fees associated with the spoliation sanctions motion as well as reopened discovery. The Clerk of Court is directed to close the motion at docket number 44.

Dated: New York, New York
      March 3/, 2017

SO ORDERED

*[signature]*
PAUL A. CROTTY
United States District Judge